## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Civil Action No. 23-03177 (ACR) |
| GAIL E. NEELON, | |
| *Defendant*. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff the United States of America ("the Government") has brought suit under the Ethics in Government Act (the "Act" or "EIGA"), 5 U.S.C. §13101, *et seq.*, against former State Department official Gail E. Neelon for failure to file a required financial disclosure report upon her retirement. Dkt. 1 (Compl.) ¶¶ 1, 13.  The Government seeks from Defendant (1) submission of the financial disclosure report, (2) a late filing fee of $200, and (3) a civil penalty.  *Id.* at 6-7.  Before the Court is the Government's Motion for Default and Final Judgment under Federal Rule of Civil Procedure 55.  Dkt. 8.  For the reasons that follow, the Court grants the Government's Motion and assesses a civil penalty of $12,300 against Neelon.

### I.   BACKGROUND

#### A.  The Ethics in Government Act

Congress enacted the EIGA in 1978 to "increase public confidence in the federal government" and "demonstrate the integrity of government officials."  *Lovitky v. Trump*, 949 F.3d 753, 755 (D.C. Cir. 2020) (cleaned up).  To that end, the EIGA requires specified officials to periodically disclose their financial information, such as "income, gifts received, property interests, liabilities, real estate and securities transactions, positions held, and the value of a qualified blind trust."  *Id.*; *see* 5 U.S.C. § 13104.  As relevant here, an employee in

1

the Executive Branch must file a disclosure report if she holds a position for which "the rate of basic pay is equal to or greater than 120 percent of the minimum rate of basic pay payable for GS-15 of the General Schedule." 5 U.S.C. § 13103(f); *accord* 5 C.F.R. § 2634.202(c). Such an individual must file a disclosure report "on or before the 30th day after termination of employment," unless she has accepted another position covered by the Act. 5 U.S.C. § 13103(e); *accord* 5 C.F.R. § 2634.201(e).

The Attorney General may bring a civil enforcement action against any individual who "knowingly and willfully fails to file or report any information" required by the EIGA. 5 U.S.C. § 13106(a). The court may assess a civil penalty of up to $73,627 against the non-filer. 5 C.F.R. § 2634.701(b); *see also* 5 U.S.C. § 13106(a) (setting maximum penalty of $50,000); 28 U.S.C. § 2461 note (authorizing adjustment of maximum penalty to account for inflation).

### B. Factual Background

Neelon served as the Dean of Leadership and Management School at the State Department's Foreign Service Institute from 2010 until her retirement in 2021. Compl. ¶ 10; Dkt. 8-1 (Huitema Decl.) ¶ 3. Because her salary was higher than 120 percent of the minimum rate of basic pay for GS-15 since 2013, Neelon was required to file annual financial disclosure reports as well as a termination report upon retirement. Compl. ¶¶ 10, 13; Huitema Decl. ¶ 3. Neelon complied with her annual disclosure obligations under the EIGA from 2013 to 2020, though she filed after the deadline in 2019 and 2020. Compl. ¶ 11; Huitema Decl. ¶ 5. When Neelon retired on August 31, 2021, the EIGA required that she file her termination financial disclosure report by September 30, 2021. Compl. ¶ 13; Huitema Decl. ¶ 7; 5 U.S.C. § 13103(e). Neelon failed to do so. Compl. ¶ 14; Huitema Decl. ¶ 23.

The Government made various attempts to contact Neelon after her retirement. From July 30, 2021, to May 2023, the Government sent automated weekly past-due reminders to

Neelon through an online system; these reminders went to Neelon's personal email address, rather than her work email address, after November 19, 2021. Compl. ¶ 14; Huitema Decl. ¶ 8. A State Department ethics official, Sarah E. Taylor, also reached out to Neelon at her personal email address on October 18, 2021, reminding her of her obligation to file a termination report. Compl. ¶ 16; Huitema Decl. ¶ 10. Taylor subsequently followed up on this email a few times and received a response from Neelon on December 13, 2021, requesting a link to file the report. Compl. ¶¶ 17-20; Huitema Decl. ¶¶ 11-12. Taylor did not provide the link until three months later. Compl. ¶ 21; Huitema Decl. ¶ 13. On March 15, 2022, four days after Taylor had emailed the link to Neelon, Taylor sent a letter via certified mail to Neelon's home address on file. Compl. ¶ 22; Huitema Decl. ¶ 14. The letter was delivered to the front desk area of Neelon's apartment building. Compl. ¶ 22; Huitema Decl. ¶ 14.

On May 6, 2022, the State Department's Office of Legal Advisor, Ethics and Financial Disclosure sent a reminder to Neelon's personal email address; another ethics official, Jane M. Parker, followed up on the email ten days later. Compl. ¶¶ 23-24; Huitema Decl. ¶¶ 15-16. On August 22, 2022, Parker sent a letter via certified mail to Neelon's home address, but the letter was unclaimed and therefore returned to the State Department. Compl. ¶ 25; Huitema Decl. ¶ 17. On October 17, 2022, Parker sent another letter via certified mail, and the State Department sent an email to the five email addresses Lexis-Nexis identified as belonging to Neelon; the email to Neelon's personal address could not be delivered. Compl. ¶¶ 26-27; Huitema Decl. ¶¶ 19-20. In May 2023, the State Department referred this matter to the Department of Justice. Compl. ¶ 28; Huitema Decl. ¶ 21; *see* 5 U.S.C. § 13106(b). The Government also resumed its automated weekly email reminders in August 2023. Huitema Decl. ¶ 22.

### C.  Procedural History

The Government filed suit on October 23, 2023.[1]  Neelon failed to appear or file an answer, and the Clerk of Court entered default against her on December 21, 2023.  Dkt. 6. The Government moved for default and final judgment on January 24, 2024.  Dkt. 8.  The Court issued a Minute Order on March 25, 2024, giving Neelon "one final opportunity to either appear in this case or attempt to reach a settlement with the United States."  Min. Order (Mar. 25, 2024).  The Court ordered the Government to hand-serve the Minute Order on Neelon by April 5, and advised Neelon that it would defer ruling on the Government's Motion for Default and Final Judgment until at least April 29 to give Neelon a chance to appear in this case or attempt to reach a settlement with the Government.  *Id.*  The Government complied with its obligations under the Minute Order.  Dkt. 14.  To date, Neelon has not appeared in this case and, according to a Status Report filed by the Government on April 26, 2024, has not contacted the Government about the possibility of settlement.  Dkt. 15.

## II.    LEGAL STANDARD

"A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics."  *United States v. Gant*, 268 F. Supp. 2d 29, 32 (D.D.C. 2003).  Because courts prefer to adjudicate disputes on the merits, default judgment is available "only when the adversar[ial] process has been halted because of an essentially unresponsive party."  *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (cleaned up).  Default judgment may also be entered if the defendant's failure to "respond to the summons and complaint, the entry of default, or the motion for default judgment" is "plainly willful."  *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12 (D.D.C. 2013) (cleaned up).

---

[1] The Government alleges that before filing this action the Department of Justice sent Neelon a letter offering her an opportunity to settle the matter without litigation, but Neelon did not respond.  Dkt. 8 at 12 n.2.

Although default judgment establishes the defendant's liability, courts must independently determine the damages award unless the amount is certain. *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001). When the relevant statute "leave[s] the amount of the civil penalty to the discretion of the court, courts generally have tailored the penalty to the offense and attendant circumstances." *Gant*, 268 F. Supp. 2d at 33. Courts may consider the severity of the violation as well as the defendant's ability to pay in determining the appropriate civil penalty. *See United States v. Manigault Newman*, 594 F. Supp. 3d 1, 8-9 (D.D.C. 2022); *United States v. Lairy*, No. 19-cv-2488, 2020 WL 4039176, at *3-4 (D.D.C. July 17, 2020).

### III.    ANALYSIS

The EIGA imposes liability on an individual if the individual satisfies three requirements: (1) she is required to file a report pursuant to 5 U.S.C. § 13104; (2) she has failed to file the report; and (3) her failure is "knowing[] and willful[]." 5 U.S.C. § 13106(a); *Manigault Newman*, 594 F. Supp. 3d at 5. Neelon readily meets the first two elements. She was required to file a termination report because she was an employee in the Executive Branch whose compensation exceeded "120 percent of the minimum rate of basic pay payable for GS-15 of the General Schedule." 5 U.S.C. § 13103(f); Compl. ¶¶ 10, 13; Huitema Decl. ¶¶ 3-4. She has not filed that termination report. Compl. ¶ 29; Huitema Decl. ¶ 23.

Neelon also satisfies the third element because her failure to report is knowing and willful. An individual "knowingly and willfully" fails to comply with the EIGA when "that individual intentionally disregards the statute or is indifferent to its requirements." *Gant*, 268 F. Supp. 2d at 33 (cleaned up). In *Gant*, the Court found that the defendant was "indifferent to the EIGA's filing requirements" because he had received "two departmental memoranda, three certified letters from the Department, a summons and copy of the plaintiff's complaint,

two voice-mail messages, [and] a follow-up letter from the plaintiff's counsel." *Id.*  Here, the Government attempted to reach Neelon via automated email reminders, emails from ethics officials, and certified letters for over a year.  Dkt.1 ¶¶ 14-27; Huitema Decl. ¶¶ 8-20.  Neelon acknowledged receipt of at least one of the email reminders using the address to which many of the messages were sent.  Dkt.1 ¶¶ 19; Huitema Decl. ¶ 11-12.  Neelon was also served with process and the Government's Motion for Default and Final Judgment and failed to respond or seek a settlement with the Government, even after being hand-served with a Minute Order warning her of the consequences of ignoring her reporting obligation.  Dkts. 3, 6, 12, 15; Min. Order (Mar. 25, 2024).  This Court has consistently found knowing and willful violations of the EIGA when defendants failed to take action despite multiple communications from the Government, *see Manigault Newman*, 594 F. Supp. 3d at 6 (citing cases on this point), including where defendants were less "essentially unresponsive" than Neelon, *see Lairy,* 2020 WL 4039176, at *2; *see also Gant*, 268 F. Supp. 2d at 30-32. Therefore, default judgment for failure to comply with the EIGA is appropriate here.

"[A]ll that remains is the question of the appropriate penalty."  *Manigault Newman*, 594 F. Supp. 3d at 8.  Neelon's ongoing failure to file her report despite repeated warnings is troubling and warrants a substantial fine.  But the Court also does not believe that the record supports imposing the statutory maximum, or a penalty close to it.  The Court agrees with earlier decisions from this District that "the maximum penalty should be reserved for the most egregious of cases and applied only in situations where the [non-filer] has the greatest incentive to avoid public reporting."  *Lairy,* 2020 WL 4039176, at *3.  Based on Neelon's financial disclosure report from 2020, Dkt. 10, the Court is unconvinced that her noncompliance was motivated by a desire to avoid reporting transactions.  The Court is also mindful that Neelon complied with her annual filing obligations from 2013 to 2020, and that she did not have any issue with filling on time until the last two years of her government

service.  Given these considerations, the Court concludes that a civil penalty of $12,300—

along with a late-filing fee of $200, *see* 5 U.S.C. § 13106(d)—is appropriate.

## IV.    CONCLUSION AND ORDER

For these reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Default and Final Judgment, Dkt. 8, is

**GRANTED**.  It is further

**ORDERED** that Defendant shall pay Plaintiff a civil penalty of $12,300 within 90

days of the date of this Order.  It is further

**ORDERED** that Plaintiff shall provide written instructions to Defendant explaining

the steps she must take to file her 2021 termination public financial disclosure report and

identifying the individual(s) whom she may contact if questions arise.  Plaintiff shall send

this information to Defendant via certified mail within 30 days of the date of this Order.  It is

further

**ORDERED** that Plaintiff shall file her 2021 termination public financial disclosure

report, as required by the EIGA, and pay the $200 late-filing fee pursuant to 5 U.S.C.

§ 13106 within 30 days of the date she receives Plaintiff's instructions.  And it is further

**ORDERED** that Plaintiff shall file a notice advising the Court whether Defendant

complied with the terms of this Order within 120 days of the date of this Order.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff and against

Defendant consistent with the terms of this Order.

**SO ORDERED**.


Date:  May 14, 2024                                    _____

                                                       ANA C. REYES
                                                       United States District Judge